# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00743-CV

---

**Neurodiagnostic Consultants, LLC d/b/a Synaptic Resources of Austin, LLC, a Texas Limited Liability Company, Appellant**

**v.**

**Corey Villalobos, Appellee**

---

## FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
## NO. D-1-GN-17-004696, THE HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This appeal concerns a defamation claim by Neurodiagnostic Consultants, LLC d/b/a Synaptic Resources of Austin, LLC (Synaptic), against Corey Villalobos, a former employee. The claim arose from a comment concerning Synaptic that Villalobos left on a post in a LinkedIn group. Synaptic alleged that Villalobos falsely accused Synaptic of engaging in criminal activity. The district court dismissed Synaptic's claim under the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011. We will affirm the district court's order.

## BACKGROUND[1]

Synaptic supplies intraoperative neuromonitoring services (IONM) to hospitals, clinics, and surgeons. This means that a technologist, hired and trained by Synaptic, uses specialized equipment to monitor the integrity of a patient's nervous system during surgery. In January 2015, Synaptic hired Villalobos as a technologist and, one year later, promoted him to a field manager position. Villalobos left Synaptic in September 2016 and immediately began working for Traxx, a newly formed competitor of Synaptic. Synaptic subsequently sued Villalobos, Traxx, and several other defendants. In general, Synaptic alleged that before leaving Synaptic, Villalobos coordinated with Traxx officers and employees to harm Synaptic and benefit Traxx.

Villalobos and Jon Schiff, President of Synaptic, both had access to a LinkedIn group called "Surgical Neurophysiology & Neuromonitoring." While the lawsuit was ongoing, Villalobos commented on a post there from Neuro News. This post was titled "Medical Board says Austin surgeon took neuromonitoring kickbacks—Growth in neuromonitoring driven mainly by crooks. The final blow-out?" The post linked to an article from the Austin American Statesman titled "Medical board says Austin surgeon took neuromonitoring kickbacks." The text of the Statesman's article is not in the record, but Schiff described its contents in an affidavit:

> The subject of this article was that the Texas Medical Board had accused a neurosurgeon of misleading patients and violating anti-kickback laws as he referred his patients to a neuromonitoring company in which he had a financial interest. National Neuromonitoring Services, which is a direct competitor of

---

[1] We draw this description from the allegations in the parties' live pleadings and the affidavit of Synaptic's President, Jon Schiff. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a) (directing courts to "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based" when deciding whether to grant TCPA dismissal motion).

Synaptic, was implicated in the article. The article further stated an anonymous person had sent letters containing allegations against the physician to the board.[2]

Villalobos left the following comment below the Neuro News post: "It's said that the 'anonymous' person is Jon Schiff, president of [S]ynaptic [R]esources. They are equally as dirty [a] company. And do these things to get surgeons to switch to their company."

Synaptic subsequently amended its pleadings to sue Villalobos for defamation. Specifically, Synaptic alleged Villalobos falsely stated Synaptic "engages in illegal conduct, including providing illegal kickbacks, to develop business." Villalobos filed a motion to dismiss that claim under the TCPA. Synaptic filed a response and attached Schiff's affidavit and a screenshot of the LinkedIn post and Villalobos' comment. The district court dismissed the defamation claim, which was then Synaptic's only remaining cause of action.[3] This appeal ensued. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(12) (authorizing accelerated appeal from interlocutory order denying TCPA motion to dismiss).

## TCPA DISMISSAL MECHANISM

The purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law" while still "protect[ing] the rights of a person to file

---

[2] Villalobos does not dispute the accuracy of Schiff's description of the Statesman's article.

[3] Villalobos and the other defendants had previously filed a motion to dismiss Synaptic's claims under the TCPA. While Villalobos' motion to dismiss the defamation claim was pending, the district court granted that motion and severed the dismissed claims into a different cause number. This Court disposed of Synaptic's appeal of that order in *Neurodiagnostic Consultants, LLC v. Nallia*, No. 03-18-00609-CV, 2019 WL 4231232 (Tex. App.—Austin Sept. 6, 2019, no pet. h.) (mem. op.).

3

meritorious lawsuits for demonstrable injury." *Id*. § 27.002; *see id.* § 27.001(2)–(4) (defining exercise of protected rights). To effectuate this purpose, the Legislature has provided for a special motion to dismiss designed to expedite the dismissal of claims brought to intimidate or to silence a party's exercise of the protected rights. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam).

"Reviewing a TCPA motion to dismiss requires a three-step analysis." *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). As a threshold matter, the moving party must show by a preponderance of the evidence that the TCPA properly applies to the legal action against it. Tex. Civ. Prac. & Rem. Code § 27.005(b). If the moving party meets that burden, the nonmoving party must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id*. § 27.005(c). If the nonmoving party satisfies that requirement, the burden shift backs to the moving party to prove each essential element of any valid defense by a preponderance of the evidence. *Id*. § 27.005(d).

In determining whether to dismiss a legal action under the TCPA, courts are to consider, as evidence, "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). We review de novo whether each party carried its assigned burden. *Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.).

**ANALYSIS**

The sole issue on appeal is whether Synaptic carried its burden to establish a prima facie case of defamation by clear and specific evidence.[4] A prima facie case "refers to

---

[4] The parties do not dispute that the TCPA applies to this legal action.

4

evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam)). The TCPA further requires that the nonmoving party meet this burden with evidence that is "clear and specific." Tex. Civ. Prac. & Rem. Code § 27.005(c). This means that the plaintiff cannot rely on "general allegations that merely recite the elements of a cause of action" but "must provide enough detail to show the factual basis for its claim." *In re Lipsky*, 460 S.W.3d at 590–91; *see Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam) ("Under the [TCPA], more than mere notice pleading is required to establish a plaintiff's prima facie case.").

The essential elements of defamation are: (1) publication of a verifiably false statement of fact, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault regarding the truth of the statement, and (4) damages, unless the statement is defamatory per se. *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). The parties join issue over whether Synaptic's claim is for defamation per se, and if not, whether Synaptic provided prima facie evidence of damages. *See In re Lipsky*, 460 S.W.3d at 596 (explaining that "actual damage is not an essential element of [a defamation per se] claim to which the TCPA's burden of clear and specific evidence might apply").

**Defamatory Meaning**

The threshold question in a defamation action is whether the statement "is reasonably capable of a defamatory meaning" when examined "from the perspective of an

5

ordinary reader in light of the surrounding circumstances." *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013). This inquiry is objective and involves two independent steps. *Dallas Morning News v. Tatum*, 554 S.W.3d 614, 625 (Tex. 2018), *cert. denied*, 139 S. Ct. 1216 (2019). The first step is to decide "whether the meaning the plaintiff alleges is reasonably capable of arising from the text of which the plaintiff complains." *Id.* The second is to determine whether that meaning, if reasonably capable of arising from the text, "is reasonably capable of defaming the plaintiff." *Id.* "If the statement is not reasonably capable of a defamatory meaning, the statement is not defamatory as a matter of law and the claim fails." *Hancock*, 400 S.W.3d at 66.

Only objectively verifiable statements, as opposed to mere statements of opinion, are actionable as defamation. *Dallas Symphony Ass'n v. Reyes*, 571 S.W.3d 753, 762 (Tex. 2019). Texas follows the common law rule that such statements are defamatory per se or per quod. *Tatum*, 554 S.W.3d at 624. "Defamation per se occurs when a statement is so obviously detrimental to one's good name that a jury may presume general damages, such as for loss of reputation or for mental anguish." *Id.* (citing *Hancock*, 400 S.W.3d at 63–64). This presumption enables the plaintiff to recover nominal damages without proof of any specific loss. *Brady v. Klentzman*, 515 S.W.3d 878, 886 (Tex. 2017). On the other hand, "[d]efamation per quod is defamation that is not actionable per se." *In re Lipsky*, 460 S.W.3d at 596. If the statement is defamatory per quod, the plaintiff must plead and prove damages to prevail. *Brady*, 515 S.W.3d at 886.

Historically, the common law also used the term "defamation per se" to refer to defamation that is "defamatory by its text alone," and "defamation per quod" to refer to a statement "whose defamatory meaning required reference to extrinsic facts." *Tatum*, 554 S.W.3d at 625. Because this distinction "is not the same as that between defamation which is actionable

6

of itself and that which requires proof of special damage," the Texas Supreme Court recently introduced the terms "textual defamation" and "extrinsic defamation." *Id.* at 626 (citation omitted). Textual defamation occurs "when a statement's defamatory meaning arises from the words of the statement itself, without reference to any extrinsic evidence." *Id.* In contrast, extrinsic defamation "occurs when a statement whose textual meaning is innocent becomes defamatory when considered in light of 'other facts and circumstances sufficiently expressed before' or otherwise known to the reader." *Id.* (quoting *Snider v. Leatherwood*, 49 S.W.2d 1107, 1109 (Tex. App.—Eastland 1932, writ dism'd w.o.j.)).

Synaptic argues that its claim is for textual defamation because the defamatory meaning it alleges arises from the text of Villalobos' comment. Villalobos responds that Synaptic's claim is for extrinsic defamation because Synaptic must resort to extrinsic facts and circumstances to establish its defamatory meaning, if any. *Tatum* did not address case law regarding proof of damages but expressly ratified "the continued usage of (and distinction between) 'defamation per se' and 'defamation per quod' as used in relation to special damages." *Id.* In the context of defamation per quod—defined as defamation that "is not apparent but is proved by extrinsic evidence showing its injurious meaning"—the Texas Supreme Court has held that actual damages are an essential element of the plaintiff's claim. *See Brady*, 515 S.W.3d at 886 & n.4; *see also Adams v. Starside Custom Builders*, No. 05-15-01162-CV, 2018 WL 6427640, at *13 (Tex. App.—Dallas Dec. 7, 2018, pet. denied) (mem. op.) (citing similar precedent from courts of appeal). Applying this precedent, we agree that if Synaptic's claim is for extrinsic defamation, damages are an essential element of its claim. *See Adams*, 2018 WL 6427640, at *13 ("*Tatum* did not impact existing case law requiring proof of actual damages in an extrinsic-defamation case.").

7

Synaptic argues that Villalobos' comment impliedly accuses Synaptic of paying kickbacks. In a defamation-by-implication case, the defamatory meaning "arises solely from the statement's text, but it does so implicitly." *Tatum*, 554 S.W.3d at 627. Synaptic asserts that it is permissible to consult the contents of the Statesman article and the title of the LinkedIn post to establish that meaning because "it has long been held that extrinsic facts may be considered in determining whether a writing is [defamatory] per se where the extrinsic facts are presumably known to the readers of the statement." *Sprewell v. NYP Holdings*, 772 N.Y.S.2d 188, 192 (N.Y. Sup. Ct. 2003) (internal citations, quotation marks, and brackets omitted). We disagree. *Sprewell* discusses what Texas law terms "defamation by innuendo." That concept refers to using "inducements, colloquialisms, and explanatory circumstances" to explain the defamatory meaning of a statement. *Moore v. Waldrop*, 166 S.W.3d 380, 385 (Tex. App.—Waco 2005, no pet.); *see Vice v. Kasprzak*, 318 S.W.3d 1, 17 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("Innuendo may be used to explain but not to extend the effect and meaning of the language."). However, "defamation by implication is not the same thing as defamation by innuendo." *Tatum*, 554 S.W.3d at 627. The difference is the same as that between extrinsic defamation and textual defamation generally: "the first requires extrinsic evidence, but the second arises solely from a statement's text." *Id.* If we must resort to outside facts and circumstances known to the reader, such as the title of the LinkedIn post or the contents of the Statesman article, to establish the meaning of Villalobos' comment, Synaptic's claim is for extrinsic defamation. *See id.*

With this framework in mind, we now address Synaptic's allegation. The full text of Villalobos' comment is: "It's said that the 'anonymous' person is Jon Schiff, president of [S]ynaptic [R]esources. They are equally as dirty [a] company. And do these things to get surgeons to switch to their company." Synaptic alleges that the gist of his comment is that

8

Synaptic is a "dirty" company because it paid kickbacks to doctors and engaged in other illegal business practices. *See* Webster's Third New International Dictionary 642 (2002) (defining "dirty" as "marked by moral corruption or by criminality"). Accusations of a crime or "[r]emarks that adversely reflect on a person's fitness to conduct his or her business or trade" are both examples of defamation per se. *In re Lipsky*, 460 S.W.3d at 596. Villalobos does not explain the meaning of his assertion that Schiff was "the 'anonymous' person," indicate what corporation Synaptic is "dirty" in comparison to, or explain what "things" Synaptic does to recruit doctors. Without more information, Villalobos' comment is not capable of any definite meaning except that Villalobos believes Synaptic's business practices are "dirty." And without more details, Villalobos' general accusation that Synaptic is "dirty" is not a verifiable statement of fact. *See Reyes*, 571 S.W.3d at 762 (reiterating that only statements verifiable as false are actionable as defamation).

Assuming without deciding that Villalobos' statement that Synaptic is a "dirty" company necessarily means that Synaptic engages in illegal business practices, it would not be actionable as a remark that adversely reflects on Synaptic's fitness to engage in its business. To qualify as defamation per se under this category, the statement must affect the plaintiff in some way that is "peculiarly harmful to the plaintiff's trade, business, or profession and not merely upon the plaintiff's general characteristics." *In re Lipsky*, 460 S.W.3d at 596. "Disparagement of a general character, equally discreditable to all persons, is not enough" unless the particular quality disparaged "is peculiarly valuable in the plaintiff's business or profession." *Hancock*, 400 S.W.3d at 67 (quoting Restatement (Second) of Torts § 573 (1977) cmt. c, e.). Synaptic argues that Villalobos' comment rises to that level because he specifically accused it of illegal behavior, thereby injuring its recruitment of doctors in the market for IONM services. But a

9

reputation for conducting business legally is not "peculiarly valuable" to those in the business of providing IONM services as opposed to those in any other industry. While Villalobos' comment might impugn Synaptic's "general characteristics," on its own it does not, as a matter of law, address its business in a peculiarly harmful way. *See In re Lipsky*, 460 S.W.3d at 596. We conclude Synaptic failed to establish a prima facie case of defamation per se.

**Damages**

Having concluded Villalobos' statement is not defamatory per se, Synaptic must show it provided prima facie proof of damages to defeat Villalobos' motion to dismiss. Synaptic argues that, taking the factual assertions in its pleading and attachment as true as we must, there is sufficient circumstantial evidence of damages to establish a prima facie case.

The TCPA allows the nonmoving party to establish a prima facie case with circumstantial evidence. *Id.* at 589. Circumstantial evidence is "indirect evidence that creates an inference to establish a central fact." *Id.* In the context of damages, Synaptic had the burden to produce sufficient evidence "to allow a rational inference that some damages naturally flowed from the defendant's conduct." *S & S Emergency Training Sols. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018); *see Deuell v. Texas Right to Life Comm.*, 508 S.W.3d 679, 689 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (noting that nonmoving party's burden was "to adduce evidence supporting a rational inference as to the existence of damages, not their amount or constituent parts"). An inference is not rational "if premised on mere suspicion—'some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence.'" *Suarez v. City of Texas City*, 465 S.W.3d 623, 634 (Tex. 2015) (quoting *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003) (per curiam)).

Synaptic argues that we can reasonably infer a substantial number of the 2,316 members of the LinkedIn group "Surgical Neurophysiology & Neuromonitoring" "were undoubtedly surgeons who use IONM services" and that those persons would not use National Neuromonitoring Services in the future after seeing the Austin American Statesman article linked in the post. Based on this inference, Synaptic reasons it is "apparent that Villalobos' statement accusing Synaptic of the same behavior would also turn those potential customers from Synaptic." Assuming the record supports a reasonable inference that members of the LinkedIn group were surgeons using IONM services, there must also be a basis for inferring they believed Villalobos' assertions regarding Synaptic. "Showing that the community was aware of and discussed the defamatory statements is not enough; there must be evidence that people believed the statements and the plaintiff's reputation was actually affected." *Brady*, 515 S.W.3d at 887 (citing *Burbage v. Burbage*, 447 S.W.3d 249, 261–62 (Tex. 2014)). Nothing in the record provides a basis for inferring that even a single member of "Surgical Neurophysiology & Neuromonitoring" believed that Synaptic paid illegal kickbacks or engaged in other illegal practices. Synaptic presented only suspicions regarding the effect of Villalobos' comment, and unsupported suspicions do not rise to the level of circumstantial evidence. *See Suarez*, 465 S.W.3d at 634. We conclude Synaptic failed to establish a prima facie case of damages.

We overrule Synaptic's sole issue on appeal.

## CONCLUSION

We affirm the district court's order.

_____
                              Edward Smith, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed

Filed:   October 4, 2019